IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

| | |
|---|---|
| THOMAS PORTER, et al., ) | |
| ) | |
| ) | |
| Plaintiffs-Appellees, ) | |
| ) | |
| v.                                    ) | No. 18-6257 |
| ) | |
| HAROLD W. CLARKE, et al., ) | |
| ) | |
| Defendants-Appellants. ) | |
| ) | |

## PETITION FOR REHEARING AND REHEARING EN BANC

Pursuant to Federal Rule of Appellate Procedure 40 and Local Rule 40, Defendants-Appellees petition for rehearing and, in the alternative, rehearing en banc.

## INTRODUCTION

As Judge Niemeyer's dissenting opinion explains, the panel decision affirms a district court's grant of prospective relief against "conditions of confinement that *have not existed for over three years.*" Slip op. 34 (dissenting opinion). But the Supreme Court has repeatedly emphasized that injunctive relief "is unavailable absent a showing of irreparable injury, a requirement that *cannot be met* where there is no showing of any real or immediate threat that the plaintiff will be

wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983) (emphasis added). In addition, "one of [the] principle objectives" of the Prison Litigation Reform Act (PLRA) was to "curb[] the equitable discretion of district courts" by "establish[ing] new standards for prospective relief." *Miller v. French*, 530 U.S. 327, 329, 339 (2000). And, under those new standards, "if a violation no longer exists, the statute does not permit the court to order prospective relief." *Hallett v. Morgan*, 296 F.3d 732, 743 (9th Cir. 2002).

Because the panel's decision opens the door to district court injunctions against other long-superseded prison policies, it is inconsistent with the PLRA's goal of "eliminat[ing] unwarranted federal-court interference with the administration of prisons," *Woodford v. Ngo*, 548 U.S. 81, 93 (2006), and thus "involves one or more questions of exceptional importance," Local R. 40(b)(iv).

## STATEMENT

1.   This case is an Eighth Amendment challenge to the former conditions of confinement on Virginia's death row. The conditions of confinement were materially changed in 2015, and it was common ground before the panel that any constitutional violations were

2

remedied before the district court entered its injunction and that the current "conditions of confinement do not violate the Eighth Amendment." Slip op. 26; JA 1584 (district court opinion filed July 8, 2016, stating that "plaintiffs concede" that the then-existing conditions of confinement "do not violate the Eighth Amendment").

    2.    Given these changes, the district court originally dismissed this case on grounds of Article III mootness. JA 1585–1607. This Court reversed, holding that the defendants did not "meet their 'formidable burden of showing that it is absolutely clear the wrongful behavior could not reasonably be expected to recur.'" *Porter v. Clarke*, 852 F.3d 358, 366 (4th Cir. 2017) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000)). The Court specifically noted, however, that "[t]he district court [had] not address[ed] the merits of Plaintiffs' claims for declaratory and injunctive relief" and stated that the defendants could raise the issue of "Plaintiffs' entitlement to [equitable] relief on remand." *Id.* at 366 n.4.

    3.    On remand, the district court granted plaintiffs' motion for summary judgment, entered an order declaring that the prior conditions had been unconstitutional under the Eighth Amendment,

3

and enjoined the defendants from reinstating those conditions. JA 2467. The court concluded that the PLRA did not require a current and ongoing constitutional violation before it could enter an injunction. JA 2455–56. And even though the defendants "ha[d] all stated, under oath, that they do not intend to return to the prior policies and there [was] no evidence suggesting that these statements are false," JA 2460, the district court concluded that the theoretical possibility of reversion was sufficient to justify an injunction. See JA 2461.

    4.    A divided panel of this Court affirmed in a published opinion.

    a.    The majority noted the plaintiffs' "conce[ssion] that the" conditions of confinement existing at the time of the district court's injunction "d[id] not violate the Eighth Amendment" and that those revised conditions involved significant physical changes to death row, as opposed to simple (and easily reversible) policy changes. Slip op. 26. The majority likewise did not question the defendants' "undisputed" testimony "that they have no intention of reverting to the prior conditions." *Id.* at 27 (quoting Appellants' Br. 24). But the majority nonetheless deferred to what it described as the district court's "factual

4

finding" that "Plaintiffs satisfied their burden to demonstrate a cognizable *danger* of recurrent violence." *Id.* at 27–28 (internal quotation marks and citation omitted).

The majority also concluded that the PLRA did not prevent the district court from granting prospective relief even absent any then-existing constitutional violation at the time the relief was entered. Slip op. 29–33. The majority acknowledged that the Ninth Circuit has specifically rejected that view, concluding that "if a violation does not exist, the [PLRA] does not permit the court to order prospective relief." *Id.* at 31 (quoting *Hallett v. Morgan*, 296 F.3d 732, 743 (9th Cir. 2002)). The majority stated it had "great respect for the Ninth Circuit's opinion in *Hallett*," but was "not persuaded to follow it." *Id.*

b.     Judge Niemeyer dissented. In his view, "[u]nder the plain terms of the PLRA," "*before* a district court can grant equitable relief with respect to prison conditions, there must be a 'violation of [a] Federal right' in need of correction." Slip op. 47. And "even on the untenable proposition . . . that the PLRA adds nothing to the traditional equitable principles for issuing injunctions," Judge Niemeyer found it "especially curious that the district court could genuinely believe that

5

there was a real threat of future violation." *Id.* at 47; see *id.* at 48–49 (noting that the district court "had previously observed" that the Virginia Department of Corrections "made 'significant, costly, and concrete changes to numerous facets of plaintiffs' conditions of confinement,' spending nearly $2 million on outdoor and indoor recreation areas that were constructed specifically to allow death-row inmates to have congregate activities in a secure environment"). Judge Niemeyer also criticized the majority's "cho[ic]e to defer blindly to the district court's 'factual' findings that there was a 'cognizable danger of recurrent violation,'" noting "that such a finding is a mixed question of law and fact that justifies greater scrutiny by us." *Id.* at 50 (quoting *United States v. W.T. Grant Co.*, 345 U.S. 629, 632 (1953)).

## ARGUMENT

Rehearing en banc is warranted to correct the panel's departure from both fundamental and longstanding principles of equitable relief, the specific language of the PLRA, and the Supreme Court's decision in *Miller v. French*, 530 U.S. 327 (2000). Rehearing en banc also is appropriate to address the acknowledged split between the divided

6

panel's opinion and the Ninth Circuit's unanimous opinion in *Hallett v. Morgan*, 296 F.3d 732, 743 (9th Cir. 2002).

1.  The Supreme Court has repeatedly emphasized that "[t]he *sole function* of an action for injunction is to forestall *future* violations." *United States v. Oregon State Medical Soc.*, 343 U.S. 326, 333 (1952) (emphasis added). For that reason, "[t]he equitable remedy is unavailable absent a showing of irreparable injury, a requirement that cannot be met where there is no showing of any real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

The Supreme Court has specifically applied these principles in the context of conditions-of-confinement litigation. The Court has stated that, "to survive summary judgment," an inmate "must come forward with evidence from which it can be inferred that the defendant-officials were at the time suit was filed, *and are at the time of summary judgment*, knowingly and unreasonably disregarding an objectively intolerable risk of harm, *and that they will continue to do so*." *Farmer v. Brennan*, 511 U.S. 825, 846 (1994) (emphases added). The Court has further emphasized that, "to establish eligibility for an injunction, the

7

inmate must demonstrate the continuance of that disregard during the remainder of that litigation *and into the future.*" *Id.* (emphasis added).

As Judge Niemeyer correctly explained, that standard cannot be satisfied in a case where: (i) any constitutional violation ceased *years* before the entry of injunctive relief;[1] (ii) the changes in question were "significant, costly, and concrete," slip op. 49 (dissenting opinion); and (iii) there was *undisputed* sworn testimony from the defendants both "that they believed such changes were in the best interests of both inmates and the department," *id.*, and that "they have no intention of reverting to the prior conditions," *id.* at 27; see *id.* at 49 (dissenting opinion) (stating that it "borders on the preposterous to presume that, were it not for the district court's injunctive relief, Director Clarke and his team would upend all the changes that they had made to Virginia's death row and reimpose the precise combination of conditions challenged in this action"). In affirming a grant of equitable relief in these circumstances, the panel's decision violates the "fundamental principle of judicial restraint" that, "absent the most extraordinary

---

[1] Compare slip op. 26 (stating that changes in question were adopted on August 6, 2015), with JA 2467 (district court injunction order dated February 21, 2018).

8

circumstances, federal courts are not to immerse themselves in the management of state prisons." *Taylor v. Freeman*, 34 F.3d 266, 268 (4th Cir. 1994); see also *Lyons*, 461 U.S. at 112 (1983) (cautioning that, absent "irreparable injury which is both great and immediate," the "need for a proper balance between state and federal authority" precludes issuance of injunctive relief against a sovereign State); *Rizzo v. Goode*, 423 U.S. 362, 379 (1976) ("[A]ppropriate consideration must be given to federalism in determining the availability and scope of equitable relief.").

B.     The panel's opinion also gives short shrift to the text of the PLRA and the Supreme Court's decision in *Miller*. There is indeed a "well-established rule that courts 'should not construe a statute to displace courts' traditional equitable authority absent the clearest command or an inescapable inference to the contrary.'" Slip op. 32–33 (quoting *Miller*, 530 U.S. at 340). But the Supreme Court has squarely held—in the very case the majority quoted for that general proposition—that the PLRA is such a statute. See *Miller*, 530 U.S. at 340–41 (so holding with respect to 28 U.S.C. § 3626(e)(2), which provides for automatic stays of district court's equitable orders).

9

Indeed, *Miller* specifically states that "curbing the equitable discretion of district courts was *one of the PLRA's principal objectives*." *Id.* at 339 (emphasis added). Nor can the majority's distinction between the standards for terminating injunctive relief (which the majority agreed are impacted by the PLRA, see slip op. 31) and the standards for granting such relief in the first place be squared with *Miller*'s statements that the "[t]he PLRA has restricted courts' authority to *issue and enforce* prospective relief concerning prison conditions" "by establish[ing] standards for the *entry and termination*" of such relief. *Miller*, 530 U.S. at 333, 347 (emphasis added).

The PLRA's language is direct and on point and even uses a belt-and-suspenders approach. The first sentence of Section 3626(a)(1) provides: "Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary *to correct* the violation of the Federal Right of a particular plaintiff or plaintiffs." 18 U.S.C. § 3626(a)(1) (emphasis added); § 3626(g)(7) (defining "prospective relief" as "all relief other than compensatory money damages"). The next sentence specifically addresses a district court's grant of initial relief and confirms that the use of "correct" in the previous sentence

10

was not accidental: "The court shall not grant or approve *any* prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary *to correct* the violation of the Federal right, and is the least intrusive means necessary *to correct* the violation of the Federal right." § 3626(a)(1) (emphasis added).

These requirements create a straightforward dichotomy for injunctive relief in cases involving prison conditions. So long as there are ongoing constitutional violations, federal courts may order them stopped. Once the violations have ceased, however, courts may only grant backwards-looking monetary relief.

Here, even assuming that the panel correctly concluded that the plaintiffs' constitutional rights were violated in the past, those rights were not being violated when the district court entered its order and thus could not be "correct[ed]" by a forward-looking injunction. See slip op. 47 (dissenting opinion) (noting that "[t]he majority . . . fails to analyze meaningfully whether prospective relief was 'necessary to correct' the Eighth Amendment violation alleged by the plaintiffs.").

C.   Rehearing en banc is also warranted to address (and heal) the acknowledged circuit split created by the panel's opinion. As the

11

majority acknowledged (see slip op. 31), its conclusion that the PLRA permitted an injunction in this case is flatly inconsistent with the Ninth Circuit's published opinion in *Hallett*. To be sure, the majority questioned some of *Hallett*'s reasoning, specifically its reference to specific statutory language that appears in one provision of the PLRA but not another. *Id.* But the majority never denied that its actual *holding*—that the PLRA does nothing to prevent "the award of prospective relief when a constitutional violation no longer exists," *id.* at 32—cannot be squared with *Hallett*'s equally flat statement that "if a violation no longer exists, the statute does not permit a court to award prospective relief." *Id.* at 31 (quoting *Hallett*, 296 F.3d at 31).[2]

## CONCLUSION

The petition for rehearing or rehearing en banc should be granted.

---

[2] By omitting further discussion of the substantive Eighth Amendment question, defendants do not intend to abandon their prior arguments on those issues.

12

Respectfully submitted,

HAROLD W. CLARKE; DAVID ZOOK,

By:   *s/ Matthew R. McGuire*
Matthew R. McGuire (VSB #84194)
*Principal Deputy Solicitor General*

| Mark R. Herring | Toby J. Heytens (VSB #90788) |
| *Attorney General* | *Solicitor General* |
| | |
| Victoria N. Pearson | Michelle S. Kallen |
| *Deputy Attorney General* | *Deputy Solicitor General* |
| | |
| Margaret Hoehl O'Shea | 202 North Ninth Street |
| *Assistant Attorney General* | Richmond, Virginia 23219 |
| | (804) 786-7773 – Telephone |
| | (804) 371-0200 – Facsimile |
| | SolicitorGeneral@oag.state.va.us |

13

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the requirements of Fed. R. App. P. 40(b) and 32(a) and (c) because it has been prepared in 14-point Century, a proportionally spaced font, and that it complies with the type-volume limitation of Fed. R. App. P. 40(b)(1), because it contains 2,203 words, excluding the parts exempted by Fed. R. App. P. 32(f), according to the count of Microsoft Word.

## CERTIFICATE OF SERVICE

I hereby certify that on May 17, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF) to counsel of record.

By: /s/
Matthew R. McGuire